**SCANNED**

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND

IN RE: WILLIAM SUTER, III      :

NOV 7 - 2005

AT GREENBELT
CLERK U.S. DISTRICT COURT
DISTRICT OF MARYLAND        DEPUTY

WILLIAM SUTER, III          :
    Appellant

                            :

    v.                      :        Civil Action No. 2005-2118
                                     EXEMPT FROM ECF
                            :
DISTRICT OF COLUMBIA
    Appellee                :

### MEMORANDUM OPINION

This case is before the court on appeal from the order of visiting United States Bankruptcy Judge Niles L. Jackson granting the motion of appellee District of Columbia for summary judgment, Case No. 04-1944-NVA (hereinafter "Bankr. Proceeding") (Bankr. Proceeding, paper 40). Oral argument is deemed unnecessary because the facts and legal arguments are adequately presented in the briefs and record, and the decisional process would not be significantly aided by oral argument. *See* Fed. R. Bankr. P. 8012. For the reasons that follow, the court will affirm the bankruptcy court's ruling.

## I.    Background

### A.    Proceedings in District of Columbia Superior Court

The following facts are undisputed. On July 8, 2002, the District of Columbia filed a civil complaint ("DC Action") in the Superior Court of the District of Columbia ("Superior Court") against The Steven A. Rosen Company, CW Restoration, and William N.

Suter III.[1]  The District of Columbia ("Appellee") alleged that the defendants had engaged in fraudulent and deceptive business practices in connection with the insurance adjustment process and restoration of homes destroyed by fire, in violation of the District's Consumer Protection Procedures Act (D.C. CODE §§ 28-3904, 28-3909) and the Consumer Protections Act (D.C. CODE § 28-3811). When the DC Action was filed, Appellant was the sole officer of The Steven A. Rosen Company and president of CW Restoration, Inc. Initially, all three defendants were represented by counsel, Claude Roxborough and Edward M. Kimmel.

The Superior Court held a hearing July 8, 2002, on Appellee's request for a temporary restraining order and a second hearing July 17, 2002, on a request for a preliminary injunction; Appellant appeared at both hearings and was represented by counsel.  On August 2, 2002, the Superior Court entered a Preliminary Injunction Order and Memorandum Order in which it found:

> (1) William Suter controls The Steven A. Rosen Company and CW Restoration, Inc., all defendants named in this action;
>
> (2) William Suter, through his companies, agents, and employees, took advantage of homeowners who had just suffered losses from fire, pressuring them into signing contracts with his companies when they were least able to protect themselves;

---

[1] Collectively, the defendants in the Superior Court action will be referred to as "defendants."  Appellant Suter will be referred to as "Appellant."

(3) William Suter, through his companies, agents and employees, misrepresented to homeowners the services his companies would provide and the fees they would charge;

(4) William Suter, through his companies, agents, and employees, sent forged contract documents to homeowners' insurance companies, forged endorsements on checks, and diverted for his own benefit insurance proceeds intended for subcontractors and policyholders; and

(5) William Suter, through his companies, agents, and employees, as [sic] result of his fraudulent diversion of insurance proceeds, failed to complete renovations and repairs he had agreed to perform, leaving homeowners stranded in temporary housing and without financial resources.

(Bankr. Proceeding, paper 38, ex. 4).

On September 25, 2002, Appellee filed a motion for entry of default because the defendants failed to answer the complaint. The defendants did not oppose the motion, and the Superior Court granted Appellee's motion on October 18, 2002. Subsequently, the defendants twice asked the Superior Court to set aside the default; the court denied both motions for failure to comply with procedural rules.

On May 16, 2003, during a third attempt to vacate the entry of default, the defendants withdrew their motion for business reasons and said they would proceed with an ex parte hearing on the issue of damages. Appellant concedes that he was at the hearing, however he states that he did not consent to the withdrawal as to him individually. "Any such representations to the contrary made to

3

the Court by Roxborough were in error and without Suter's consent, knowledge, and understanding." (Paper 7, at 7). The parties agreed to use a Special Master to calculate damages, and they submitted papers on the issue of damages.[2] The Special Master submitted his report on October 1, 2003.

Earlier on September 26, 2003, Appellant filed a motion for permission to proceed pro se for himself only. The Superior Court granted his motion on October 3, 2003. The Superior Court then allowed all parties to file responses to the Special Master's report. Appellant claims he filed a motion to set aside the entry of default as to him individually on October 14, 2003, (Paper 7, at 7), but the record shows that the only paperwork he filed on October 14, 2003, was an "Exceptions to the Report and Recommendation of Special Master" ("Exceptions"). (Bankr. Proceeding, paper 32, ex. 5)[3]. In the Exceptions, Appellant outlined his objections to the Special Master's accounting and asked the Superior Court to allow him discovery or an evidentiary hearing to cross examine or verify Plaintiff's ex parte proof. *Id.*

---

[2] Appellant contends that Roxborough believed that the purpose of appointing a Special Master and proceeding with ex parte proof was to allow the parties and the Special Master to work "in a collective effort to evaluate punch lists from the complaining affiants and effectuating [sic] the necessary repairs; not the determination and imposition of money damages." (Paper 7, at 6-7).

[3] Page one of Appellant's Exceptions is missing from the record. The record includes, however, a cover letter that provides the title and filing date.

at 25.   Appellant also filed a Motion to Dismiss on November 17,
2003, and the corporate defendants filed a motion on October 31,
2003, to vacate the entry of default.

In an order filed January 12, 2004 ("Restitution Order")[4], the
Superior Court denied Appellant's motion to dismiss, denied the
corporate defendants' motion to vacate, and entered judgment
against all three defendants.   With respect to Appellant's motion
to dismiss, the Superior Court stated:

> The Court is aware that a default judgment
> should not be entered against a party if the
> Complaint, on its face, does not set forth a
> valid legal claim against that party, even
> though default may have been entered;...
>
> Despite Suter's protestations, the Complaint
> clearly makes out a claim against him.  First,
> there are allegations against him
> individually.  For example, he is personally
> alleged to have made untrue representations
> and not to have made required disclosures. See
> Complaint at 8.    Corporate officers are
> "personally liable for torts which they
> commit, participate in, or inspire, even
> though the acts are performed in the name of
> the corporation." *Vuitch v. Furr*, 482 A. 2d
> 811, 821 (D.C. 1984).  In addition, in looking
> to the Complaint only, this is a case in which
> sufficient allegations have been made to
> pierce the corporate veil and hold Suter
> personally liable.  First, the Complaint
> alleges that "Defendant Suter is the sole

_____

[4] For some reason, the Restitution Order is not contained in
either the record on appeal, or in the electronic record in the
bankruptcy court.   It was received in evidence by the bankruptcy
court and the undersigned obtained a hard copy from that court.
Both parties refer to the Restitution Order in their briefs and
Appellee quotes from it.   In order to complete the record, a copy
is attached to this Opinion.

> Director, President, Vice President, Secretary
> and Treasurer of CW.  Defendant Suter is also
> the Vice President, and sole Officer of Rosen.
> He controls and participates in the acts and
> practices that are the subject of this
> action." *Id.* at 3.  In addition, Rosen and CW
> have the same address, they engage in sham
> internal deals that they fraudulently
> represent to consumers are arm's-length
> transactions, and CW is unlicenced.  The
> Court, therefore can conclude that "the
> corporation is, in reality, an alter ego or
> business conduit of the person in control" and
> that "considerations of justice and equity . .
> . justify piercing the corporate veil."
> *Lawlor v. District of Columbia*, 758 A.2d 964,
> 975 (D.C. 2000).  Since the Complaint thus
> does state a cause of action against Suter,
> judgment can be entered against him.

(Restitution Order, at 4-5).  The Superior Court also accepted the

Special Master's calculation of damages and ordered restitution in

the amount of $1,916,185.00, which was based on the amount of money

owed "to each of the consumers, depending on the consumer's

individual situation." *Id.* at 6.  The Restitution Order further

directed Appellee to file a motion to the extent it sought

permanent injunctive relief and attorneys' fees, and that if "no

motion is filed, the court will enter a final judgment along the

lines of the Order entered today." *Id.* at 9.

On March 2, 2004, the Superior Court entered a final judgment

("Final Judgment"), which included the restitution award against

all defendants in the amount of $2,162,928.00,[5] civil penalties in

---

[5] The Superior Court adjusted the restitution amount to
include another consumer.  (Bankr. Proceeding, paper 1, ex. 2, at
1-2).

6

the amount of $52,000 ($1,000 for each harmed consumer), and attorneys' fees in the amount of $290,000. (Bankr. Proceeding, paper 1, ex. 2, at 3). The Superior Court ordered that "Plaintiff shall dispense the restitution to consumers through a distribution plan." *Id.* at 3-4.

On May 13, 2004, Appellant filed a motion "for an order staying the enforcement of the judgment entered herein against Defendant, William Suter, in his individual capacity." (Bankr. Proceeding, paper 32, ex. 7, at 1). The Superior Court denied the motion June 4, 2004.

### B.   Proceedings in Bankruptcy Court

On January 28, 2004 — after the Restitution Order was filed but before the Superior Court entered Final Judgment on March 2, 2004 — Appellant filed a voluntary petition under Chapter 7 of the Bankruptcy Code. He was represented by counsel in the bankruptcy proceeding.

On July 30, 2004, Appellee commenced an adversary action seeking a determination that the Final Judgment awards are non-dischargeable pursuant to 11 U.S.C. § 523(a)(7). On March 30, 2005, Appellee filed a motion for summary judgment, for which the bankruptcy court held a hearing June 3, 2005. On July 8, 2005, the bankruptcy court granted Appellee's motion for summary judgment and held that Appellant's debt was non-dischargeable. Appellant, proceeding pro se, filed a timely appeal.

7

## II.   Standard of Review

On appeal from the bankruptcy court, the district court acts as an appellate court and reviews the bankruptcy court's findings of fact for clear error and conclusions of law de novo. *See In re Johnson*, 960 F.2d 396, 399 (4th Cir. 1992); *Travelers Ins. Co. v. Bryson Prop., XVIII* (*In re Bryson Prop., XVIII*), 961 F.2d 496, 499 (4th Cir.), *cert. denied sub nom., Bryson Prop., XVIII v. Travelers Ins. Co.*, 506 U.S. 866 (1992).

## III.  Issues on Appeal

Appellant raises three issues, contending that: (1) the final judgment of the Superior Court was void because it violated the automatic stay provision in 11 U.S.C. § 362(b)(4); (2) the bankruptcy court's decision to grant Appellee's motion for summary judgment was inappropriate because there are disputes over whether Appellant consented to the withdrawal of his motion to set aside default judgment and whether he is liable for the acts of the corporate defendants; and (3) the bankruptcy court erred when it found that the final judgment was non-dischargeable pursuant to 11 U.S.C. § 523(a)(7).

### A.   Automatic Stay Pursuant to § 362(b)(4)

Appellant argues that the Superior Court's Final Judgment against him violated the automatic stay provisions of the Bankruptcy Code, 11 U.S.C. § 362, because he filed a Chapter 7

petition before the judgment was entered against him.   Section 362(b)(4) provides:

> (b) The filing of a petition under section 301, 302, or 303 of this title, or of an application under section 5(a)(3) of the Securities Investor Protection Act of 1970, does not operate as a stay– ...
>
> [4] under paragraph (1), (2), (3), or (6) of subsection (a) of this section, of the commencement or continuation of an action or proceeding by a governmental unit or any organization exercising authority under the Convention on the Prohibition of the Development, Production, Stockpiling and Use of Chemical Weapons and on Their Destruction, opened for signature on January 13, 1993, to enforce such governmental unit's or organization's police and regulatory power, including the enforcement of a judgment other than a money judgment, obtained in an action or proceeding by the governmental unit to enforce such governmental unit's or organizations police or regulatory power . . .

Appellant argues that this section does not apply to him because under the "plain words" of § 362(b)(4) "only governmental units exercising authority under the cited Convention fall within its safe harbor." (Paper 7, at 10).  He seeks support in a Mississippi bankruptcy court decision, *In re Finley*, 237 B.R. 890 (Bankr.N.D.Miss. 1999).  Appellee responds that it used its police and regulatory authority to prevent Appellant from engaging in fraudulent and deceptive business practices and that Appellant's legal argument is "widely rejected." (Paper 8, at 11-12).

The bankruptcy court correctly held that Appellant's reading was too narrow and was inconsistent with the Fourth Circuit's standard for determining whether governmental action was excepted:

> If the purpose of the law is to promote "public safety and welfare," *Universal Life Church, Inc. v. United States* (*In re Universal Life Church, Inc.*), 128 F.3d 1294, 1297 (9th Cir. 1997), or to "effectuate public policy," *NLRB v. Edward Cooper Painting, Inc.*, 804 F.2d 934, 942 (6th Cir. 1986) (internal quotation marks omitted), then the exception applies. On the other hand, if the purpose of the law relates "to the protection of the government's pecuniary interest in the debtor's property," *Universal Life Church*, 128 F.3d at 1297, or to "adjudicate private rights," *Edward Cooper Painting*, 804 F.2d at 942 (internal quotation marks omitted), then the exception is inapplicable. The inquiry is objective: we examine the purpose of the law that the state seeks to enforce rather than the state's intent in enforcing the law in a particular case. *See United States v. Commonwealth Cos.* (*In re Commonwealth Cos.*), 913 F.2d 518, 523 n.6 (8th Cir. 1990); *United States v. Grooms*, No.Crim. A. 96-00071-C, 1997 WL 578752, at *3 (W.D.Va. Aug. 29, 1997).

*Safety-Kleen, Inc. (Pinewood) v. Wyche*, 274 F.3d 846, 865 (4th Cir. 2001). Nowhere in *Safety-Kleen* does the court require the government agency to be acting pursuant to the Convention. Moreover, the Fourth Circuit has recognized that Congress intended to exclude actions involving consumer protection laws, *inter alia*, from the automatic stay.

Just what was meant by the language of § 362 is explained in S.Rep. 989, 95th Cong., 2d Sess. 52, reprinted in 1978 U.S.Code

Cong. & Admin.News 5787, 5838.  There, speaking of § 362(b)(4) and (5), the committee said:

> Paragraph (4) excepts commencement or continuation of actions and proceedings by governmental units to enforce police or regulatory powers. Thus, where a governmental unit is suing a debtor to prevent or stop violation of fraud, environmental protection, consumer protection, safety, or similar police or regulatory laws, or attempting to fix damages for violation of such a law, the action or proceeding is not stayed under the automatic stay.

*E.E.O.C v. McLean Trucking Co.*, 834 F.2d 398, 401 (4th Cir. 1987) (emphasis in original omitted).  Consequently, the bankruptcy court did not err in holding that the Superior Court judgment against Appellant was exempt from the automatic stay.

**B.    Validity of the Debt**

In the bankruptcy court, Appellant sought, in essence, to question the validity of the debt.  Appellant argued  that the Final Judgment was not entitled to collateral estoppel effect in the bankruptcy proceeding because the Final Judgment was based on an entry of default. (Bankr. Proceeding, paper 29, at  5).  In this court, Appellant argues that the bankruptcy court's grant of summary judgment was inappropriate because there is a material factual dispute "as to whether he consented to the withdrawal of his motion to set aside the default judgment." (Paper 7, at 12). He asserts that the Superior Court should have vacated the default judgment and thereby "right the wrong that was perpetrated" on him.

*Id.* at 13.  He also claims that he did not have an opportunity to litigate his personal liability in Superior Court.  For instance, Appellant states that he did not personally guarantee the performance or obligations of the corporate defendants and asserts that the "only reason" he was included as a defendant in the DC Action was that he was an officer and shareholder of both corporate defendants.  (Paper 7, at 12-13).  Appellee responds that the bankruptcy court correctly held that the Restitution Order and Final Judgment were entitled to preclusive effect because "the Superior Court did rule on Appellant's motion to dismiss the Superior Court action as to him personally."  (Paper 8, at 16).

The federal courts must give full faith and credit to valid state court judgments pursuant to 28 U.S.C. § 1738.[6]  *See In re Genesys Data Technologies, Inc.*, 204 F.3d 124, 127 (4th Cir. 2000); *In re Heckert*, 272 F.3d 253, 257 (4th Cir. 2001).  The court explained in *In re Heckert* that

> [W]hen a prior state court judgment is the
> debt at issue, we are of [the] opinion that
> the bankruptcy court, in an adversary
> proceeding to determine whether the debt is

---

[6] 28 U.S.C. § 1738 provides in pertinent part:

> Such acts, records and judicial proceedings or
> copies thereof, . . . shall have the same full
> faith and credit in every court within the
> United States and its Territories and
> Possessions as they have by law on usage in
> the court of such State, Territory or
> Possessions from which they are taken.

>           dischargeable, cannot issue its own judgment
>           on the debt to replace the state court
>           judgment previously obtained.    All the
>           bankruptcy court is called upon, or authorized
>           to do, is to determine whether or not the
>           state judgment is dischargeable.

272 F.3d at 257.    Where the debtor claims that a state court

default judgment should not be binding in a later federal

bankruptcy dischargeability proceedings, courts apply the forum

jurisdiction's law of collateral estoppel to determine the

judgment's preclusive effect.    *See In re Ansari*, 113 F.3d 17 (4th

Cir. 1997); *In re Genesys Data Technologies, Inc.*, 204 F.3d at 129;

*In re Heckert*, 272 F.3d at 257.

District of Columbia courts have held that collateral estoppel

applies where

>           [A]n issue of fact or law is actually
>           litigated and determined by a valid and final
>           judgment, and the determination is essential
>           to the judgment, the determination is
>           conclusive in a subsequent action between the
>           parties, whether on the same or a different
>           claim.   Offensive use of collateral estoppel
>           arises when a plaintiff seeks to estop a
>           defendant from relitigating the issues which
>           the defendant previously litigated and lost
>           against another plaintiff.    Parkland Hosiery
>           Co., Inc. v. Shore, supra note 7, 439 U.S.
>           [322] at 329, 99 S.Ct. at 650 [1979].   An
>           issue is actually litigated when it "is
>           properly raised, by the pleadings or
>           otherwise, and is submitted for determination,
>           and is determined . . . An issue may be
>           submitted and determined on a motion to
>           dismiss for failure to state a claim, a motion
>           for judgment on the pleadings, a motion for
>           summary judgment . . . or their equivalents .
>           . . ." Restatement (Second) of Judgments §
>           27(d).

*Ali Baba Co. v. WILCO, Inc.*, 482 A.2d 418, 421-22 (D.C. 1984) (footnotes omitted).   A default judgment may be entitled to preclusive effect. *See Croley v. Winberg*, CIV.A. 94-7891 PLF, 1995 WL 270896, at *2 (D.D.C. Apr. 28, 1995) (giving res judicata effect to a default judgment in an eviction action); *Thomas v. Marvins Credit*, 76 A.2d 773, 776 (D.C. 1950) (giving res judicata effect where defendant did not appear in a lawsuit brought by creditor); *Woods v. Cannaday*, 158 F.2d 184, 185 (App. D.C. 1946) (giving res judicata effect where the defendant failed to appear or defend the action).

The bankruptcy court's finding that Appellant had a full opportunity to participate in the DC Action and to litigate the issue of his personal liability for the consumer protection laws was not clearly erroneous.  The bankruptcy court observed:

> In this case, the Debtor attended, and was represented by counsel, the hearing on the temporary restraining order and the hearing on the District's request for preliminary injunction.   The Debtor's attorney filed post-hearing briefs on his behalf.  The Debtor and/or his companies decided for business reasons, after several attempts to set aside the default, to proceed to the damages phase of the litigation.  By that time, the Debtor had asked the Superior Court to proceed without the benefit of counsel. He personally submitted papers in connection with the damages issue and the Master's Report.  He filed his own motion to dismiss the DC Action. In the Restitution Order, the Superior Court explicitly set out the reasons judgment against him was appropriate, despite his failure to answer the Complaint, and "despite his protestations."  The Judgment merely made

14

the injunction permanent and assessed
restitution and costs against him.

(Bankr. Proceeding, paper 38, at 13).  The record shows that
Appellant had an opportunity to litigate and to offer arguments
through his counsel and in a pro se capacity.  In fact, Appellant
recognizes that he was given the opportunity to represent himself
and to challenge the entry of default in the Superior Court.
(Paper 7, at 12).  Moreover, the Superior Court rendered its
judgment based on a consideration of Appellant's liability and this
determination was essential to the judgment.

In addition, the *Rooker-Feldman* doctrine creates another
jurisdictional obstacle to the review Appellant seeks of the
Superior Court's Final Judgment.  Under the doctrine, "[l]ower
federal courts cannot sit in direct review of final state court
decisions." *Suarez Corp. Indus. v. McGraw*, 125 F.3d 222, 229 (4th
Cir. 1997).  Accordingly, the court must reject Appellant's
argument that it review the order entered by the Superior Court.
The debt represented by that judgment is valid.

### C.   Discharge Pursuant to § 523(a)(7)

Having determined that the validity of a debt is not
reviewable, the court must consider whether it is dischargeable
pursuant to § 523(a)(7).  This section provides that an individual
is not released from debt "to the extent such debt is for a fine,
penalty, or forfeiture payable to and for the benefit of a
governmental unit, and is not compensation for actual pecuniary

loss." The bankruptcy court held that the debt was non-dischargeable because it met the language in § 523(a)(7). (Bankr. Proceeding, paper 40, at 14-15).

Appellant contends, in part, that the "entire 'final judgment' was designed to give individual relief to individual private consumers based on each individual private consumer's itemized statement and affidavit of damages." *Id.* at 11. Appellant relies on three cases in support: *In re Towers*, 162 F.3d 952, 955 (7th Cir. 1998), *National Auto Sales, Inc. v. Wilson (In re Wilson)*, 299 B.R. 380, 382 (Bankr.E.D.Va. 2003), and *In re Pulley*, 303 B.R. 81 (D.N.J. 2003). Appellee responds that Appellant's position is considered the minority rule and that the Fourth Circuit follows the majority rule that restitution is within the "fine, penalty, or forfeiture" language of § 523(a)(7). (Paper 8, at 17-18).

The Fourth Circuit has addressed § 523(a)(7) in both criminal and civil contexts. In *Thompson v. Virginia (In re Thompson)*, 16 F.3d 576, 580 (4th Cir. 1994), the court held that "for purposes of federal bankruptcy law, costs imposed as the result of criminal conviction are non-dischargeable in bankruptcy." It explained that such costs "can be considered penal for the purposes of § 523(a)(7)" and the assessment of costs operates "hand-in-hand with the penal and sentencing goals of the criminal justice system." *Id.* at 580. In civil cases, the Fourth Circuit held in *United States Department of Housing & Urban Development v. Cost Control*

16

*Marketing & Sales Management of Virginia, Inc.*, 64 F.3d 920, 927-928 (4th Cir. 1995) ("*CCMS*") that civil fines in the amount of $8.65 million levied against three developers were not dischargeable.

> The Supreme Court has given § 523(a)(7) a broad reading, and has held that it applies to all criminal and civil penalties, even those designed to provide restitution to injured private citizens. *Kelly v. Robinson*, 479 U.S. 36, 107 S.Ct. 353, 93 L.Ed.2d 216 (1986) (criminal restitution obligation was not dischargeable); *Pennsylvania Dep't of Public Welfare v. Davenport*, 495 U.S. 552, 562, 110 S.Ct. 2126, 2132-2133, 109 L.Ed.2d 588 (1990) (stating that § 523(a)(7) applies to both criminal and civil fines).
>
> We interpret these cases to say that so long as the government's interest in enforcing a debt is *penal*, it makes no difference that injured persons may thereby receive compensation for pecuniary loss. In other words, the "not compensation for actual pecuniary loss" phrase in § 523(a)(7) refers to *the government's* pecuniary loss.

*CCMS*, 64 F.3d at 927 (footnote omitted) (emphasis in original). The court reached this result even though the disgorgement remedy was based on the amount of money the purchasers lost "and [HUD] has often stated in this record that it intends to use some or all of its recovery to reimburse those purchasers. On the other hand, the final judgment orders payment to HUD and imposes no obligation on HUD to disburse the money to anyone." *Id*.

In deciding whether a fine, penalty, or forfeiture meets the language in § 523(a)(7), courts have looked to the underlying purpose of the statute. *See In re Thompson*, 16 F.3d at 580;

*Williams*, 925 F.2d at 744-45; *Attorney Grievance Comm'n of Md. v. Smith (In re Smith)*, 317 B.R. 302, 312 (Bankr.D.Md. 2004).

In this case, the purposes of the District of Columbia's consumer protection laws are to "(1) assure that a just mechanism exists to remedy all improper trade practices and deter the continuing use of such practices; (2) promote, through effective enforcement, fair business practices throughout the community; and (3) educate consumers to demand high standards and seek proper redress of grievances." D.C. CODE § 28-3901. One section creates a consumer protection agency with powers that include investigating deceptive, unfair or unlawful trade practices; issuing cease and desist orders for trade practices that violate District law; and promulgating rules that interpret, define and state general policies relating to unfair, deceptive and unlawful trade practices. D.C. CODE § 28-3903. If the District of Columbia believes a law has been broken

> and if it is in the public interest, the Corporation Counsel, in the name of the District of Columbia, may petition the Superior Court of the District of Columbia to issue a temporary or permanent injunction against the use of the method, act, or practice . . . The Corporation Counsel may recover restitution for property lost or damages suffered by consumers as a consequence of the unlawful act or practice.

D.C. CODE § 28-3909. Although the consumer protection laws allow Appellee to pursue remedies on behalf of private individuals, the overall goal is to provide oversight and enforcement of consumer

protection laws; restitution supports this goal by acting as a deterrent.   Thus, although the restitution benefits private individuals, Appellee's interest in enforcing this debt is penal in nature and "it makes no difference that injured persons may thereby receive compensation for pecuniary loss."   *CCMS*, 64 F.3d at 928.

The court also finds that the civil fines and the attorneys' fees in the Final Judgment are not dischargeable.   The civil fines against Appellant clearly meet the standard in § 523(a)(7) because they are "payable to and for the benefit of a governmental unit" and they are not "compensation for actual pecuniary loss." Similarly, there is no evidence in the record that the attorneys' fees are designed to compensate Appellee for a pecuniary loss.   The attorneys' fees award was based on an accounting of the number of hours spent on the case and what the Superior Court considered to be a reasonable rate for that work, rather than compensation for specific costs.   (Bankr. Proceeding, paper 1, ex. 2).

Accordingly, the bankruptcy court did not err in holding that the Final Judgment was not dischargeable.

**IV.   Conclusion**

For the reasons stated above, the court will AFFIRM the ruling of the bankruptcy court.   A separate Order will follow.


_____
DEBORAH K. CHASANOW
United States District Judge

19

## SUPERIOR COURT OF THE DISTRICT OF COLUMBIA
## CIVIL DIVISION

| | | |
|---|---|---|
| THE DISTRICT OF COLUMBIA, | : | |
| | : | |
| Plaintiff, | : | Civil Action No.: 02-5498 |
| | : | Judge Boasberg |
| v. | : | Calendar 10 |
| | : | |
| THE STEVEN ROSEN CO., et al., | : | |
| | : | |
| Defendants. | : | |

### ORDER (1) DENYING MOTION TO DISMISS OF DEFENDANT WILLIAM SUTER; (2) DENYING DEFENDANTS' MOTION TO SET ASIDE ORDER NOTING WITHDRAWAL OF DEFENDANTS' MOTION TO VACATE DEFAULT AND REINSTATE THE SAME MOTION TO VACATE DEFAULT; AND (3) ENTERING FINAL ORDER REGARDING RESTITUTION

The Court has reviewed the Motion To Dismiss Of Defendant William Suter, Plaintiff's Opposition, Defendants' Motion To Set Aside Order Noting Withdrawal Of Defendants' Motion To Vacate Default And Reinstate The Same Motion To Vacate Default, the Report and Recommendation of Special Master, Defendant Suter's Exceptions to the Report, the District's Response to the Report, Defendants' CW and Rosen's Response to the Report, Suter's Further Exceptions to the Report, and the District's Replies to Suter's Exceptions and Further Exceptions.

### I.      Background

In order to place this Order in context, some procedural background is necessary. The District filed its Complaint in this matter on July 8, 2002, against Steven A. Rosen Co., CW Restoration, and William Suter individually.  The Complaint asserted, *inter alia*, unfair trade practices in violation of the Consumer Protection Procedures Act ("CPPA") and sought restitution, civil penalties, and injunctive relief.   After a preliminary injunction hearing, Judge Graae issued a lengthy Order, which found that there was good

cause to believe Defendants had violated certain laws and regulations and that the District had a likelihood of success on the merits. He thus granted the District a preliminary injunction on August 22, 2002. He further found that Rosen is "a public adjuster company that offers to assist consumers whose properties have been damaged by fire." Order at 2. CW "is a home improvement contractor operating within the District of Columbia without a license." Id. Suter is the sole owner of both. Id.

As Defendants had never answered the Complaint, the District then moved for entry of default on Sept. 25, 2002. Defendants did not oppose the motion, nor did they appear at the Initial Scheduling Conference on Oct. 18, 2002, whereupon this Court, having taken over the calendar in September 2002, entered default in favor of the District. Defendants moved to set aside the default, which the Court denied without prejudice on Nov. 12, 2002, because Defendants had failed to follow Rule 55. A renewed motion to set aside the default was similarly denied without prejudice on Feb. 21, 2003, for Defendants' failure, once again, to follow Rule 55 and provide good cause and a defense. The Court, however, permitted Defendants another opportunity to set aside the default.

On May 16, 2003, in open court, however, Defendants informed the Court that they did not wish to renew their motion to set aside the default, but, for "business reasons," wished to proceed with an *ex parte* proof hearing. Defendants' attorney even left the courtroom to consult again with his clients before so representing to the Court, which representations the Court memorialized in an Order of the same date.

*Ex parte* proof hearings, as the name implies, do not typically countenance testimony by the Defendants, who are limited to cross-examining the Plaintiff's witnesses. As the District in this instance desired to proceed via affidavit, given the

number of consumers involved, the Court permitted Defendants, in lieu of cross-examination, to submit their own materials regarding damages, a process to which all parties agreed. Given the volume of documents and the requirement that an accounting be made of the damage suffered by each consumer, the Court proposed the appointment of a Special Master to recommend a formula for the computation of damages and a damages award. All parties agreed to the use of a Special Master, and the Court issued an Order on July 11, 2003, appointing John C. Hayes, Jr., to whom no party objected, as Special Master. The Court also permitted the parties to make submissions to him regarding damages. Both sides did so, and the Special Master had both pleadings and a number of binders full of materials to consider.

On September 26, 2003, Defendant Suter moved the Court to permit him to proceed *pro se* for himself only; Defendants' counsel, meanwhile, would continue to represent the entity Defendants. The Court granted the Motion in open court on Oct. 3, 2003. The Court then permitted all parties to file objections or responses to the report of the Special Master, which had been submitted on Oct. 1, 2003. The parties have done so. In addition, Suter filed a Motion to Dismiss on Nov. 17, 2003, and CW and Rosen filed a motion on Oct. 31, 2003, that asks the Court to vacate the default.

The Court will deal first with the two pending motions and then with the report of the Special Master.

**II.    Analysis**

    A.    <u>Suter's Motion to Dismiss</u>

In his Motion to Dismiss, Suter argues that "nothing in this case alleges any conduct by Defendant, William Suter, as an individual." Mot. at 1. Instead, he contends,

3

all of his actions were on behalf of the entity Defendants. In sum, he argues that "Plaintiff has offered nothing more than the fact that William Suter is an officer and sole shareholder of both corporate defendants as the basis for attempting to hold him liable in this matter." Id. at 2. The District correctly responds that this 12(b)(6) Motion is untimely, default having already been entered. The Court, nonetheless, is aware that a default judgment should not be entered against a party if the Complaint, on its face, does not set forth a valid legal claim against that party, even though default may have been entered. Elmore v. Stevens, 824 A.2d 44, 46 (D.C. 2003) ("A party is entitled to judgment based on a defaulted complaint only to the extent that the complaint alleges a 'claim for relief' as specified in Super. Ct. Civ. R. 8.") (citations omitted).

Despite Suter's protestations, the Complaint clearly makes out a claim against him. First, there are allegations against him individually. For example, he is personally alleged to have made untrue representations and not to have made required disclosures. See Complaint at 8. Corporate officers are "personally liable for torts which they commit, participate in, or inspire, even though the acts are performed in the name of the corporation." Vuitch v. Furr, 482 A.2d 811, 821 (D.C. 1984). In addition, in looking to the Complaint only, this is a case in which sufficient allegations have been made to pierce the corporate veil and hold Suter personally liable. First, the Complaint alleges that "Defendant Suter is the sole Director, President, Vice President, Secretary and Treasurer of Defendant CW. Defendant Suter is also the Vice President, and sole Officer of Rosen. He controls and participates in the acts and practices that are the subject of this action." Id. at 3. In addition, Rosen and CW have the same address, they engage in sham internal deals that they fraudulently represent to consumers are arm's-length transactions, and

4

CW is unlicensed. The Court, therefore, can conclude that "the corporation is, in reality, an *alter ego* or business conduit of the person in control" and that "considerations of justice and equity . . . justify piercing the corporate veil." <u>Lawlor v. District of Columbia</u>, 758 A.2d 964, 975 (D.C. 2000) (internal quotations and citations omitted).

Since the Complaint thus does state a cause of action against Suter, judgment can be entered against him.

B.     <u>Rosen and CW's Motion to Set Aside Default</u>

Despite clearly making a business decision to accept entry of default in May 2003, Rosen and CW, having now seen the Report of the Special Master ("Report") issued in October 2003, wish to change their minds. They are too late and without adequate reason.

In support of their Motion, Defendants make two arguments. First, they set forth Suter's arguments – namely, that the Complaint does not set forth a claim. <u>See</u> <u>Elmore</u>, *supra*. More specifically, Defendants contend that the Complaint is "not sufficient to arrive at a judgment base[d] on affidavits of people not identified in the complaint or related to any specific cause of action," and that its allegations "are really no more than opinions without any factual statements or substance." Mot. at 2. The Complaint certainly does set forth allegations sufficient to constitute causes of action for violation of the CPPA; indeed, at a contested preliminary injunction hearing, Judge Graae even found Plaintiff had a substantial likelihood of success on the merits. Allegations are all that is needed in the Complaint, and there is no requirement that particular consumers be named therein.

Second, Defendants proceed to rebut facts relating to particular consumers, licensure, and insurance. Id. at 2-3. The whole point of a default, however, is that Defendants may not now challenge the truth of the Complaint's allegations. Despite these arguments, moreover, Defendants have still not satisfied Rule 55, requiring good cause and a "verified answer setting up a defense sufficient if proved to bar the claim in whole or in part." Defendants' Motion is thus denied.

C.    Report of Special Master

In his Report, the Special Master explained that he had reviewed the materials submitted by the parties on the damages issue. Report at 1. He also correctly noted that he was not assessing liability, which had been determined by the default, but rather damages only. Id. at 1-2. The Special Master then derived the following formula for the calculation of damages:

> [the total of] the fee paid to the defendants by the consumer for construction work; the value of the work not completed, as computed by applying the percentage of work not done to the total insurance payments for construction; the percentage of work unsatisfactorily done, as computed by applying that percentage of the work to the total amount actually expended on the work; and the amount [of] out-of-pocket expenses incurred by the consumer to complete the work, deducting any remaining insurance or mortgage proceeds.

Id. at 3. The Special Master then used this formula and determined the amount of money owing to each of the consumers, depending on the consumer's individual situation. The total amount of restitution that he awarded was $2,263,209.

The Court concurs with the formula determined by the Special Master. Under the formula, restitution is based on the fee paid to Rosen (usually 10-15%) plus the value of the work not done or poorly done plus the consumer's out-of-pocket expenses minus any

6

remaining insurance or mortgage monies. This formula requires Defendants to disgorge their ill-gotten gains, and the consumers are made whole by obtaining money to have their houses fully repaired and any expenses reimbursed. In addition, no windfall accrues to any consumer.

Both sides have asserted different challenges to the Special Master's Report. The District first claims that four different consumers should have received sums: Copeland ($68,455), Cook ($15,000), Bynam ($7296), and R. Jackson ($1991). The Court agrees that the omission of Copeland appears to have been an oversight since that consumer would otherwise qualify for the amount claimed under the Special Master's formula. Awards were not made for the others apparently because either no agreement was made with Rosen or because none of the work was unfinished or unsatisfactorily completed. The Court agrees with the Special Master that these three sums should not be aggregated. Adding the $68,455 only now yields a balance of $2,331,664.

The District next argues that monies should not be awarded on behalf of contractors. The District is correct that contractors were not the consumers in whose name the action was brought; indeed, they could not have been consumers under the CPPA. The amounts of $123,045 (Keystone) and $45,691 (Woodmore Cleaners) will be deducted, yielding a new balance of $2,162,928.

Although not raised by the parties, the Court, in its independent review of the sums awarded, cannot find supporting documentation for the award to consumer Wishard. Indeed, neither of the District's spreadsheets includes any mention of this consumer, nor is an affidavit included in the accompanying binder. If there are other documents that were submitted to the Special Master, of which the Court is not aware,

7

the District may move to amend the judgment. At this time, however, the amount of $246,743 will be deducted, leaving a balance of $1,916,185.

Defendant Suter lists many exceptions to the Report, which fall into several categories. First, he objects to the formula, which the Court has already approved. Second, he claims that Rosen earned its fee and should be able to retain it. As the default has already determined that Rosen and CW violated the CPPA, they are not entitled to keep their fee. Third, Suter argues that figures in the affidavits are not correct, but the Court cannot find that the Special Master in any way erred in his appraisals of the affidavits. Fourth, he argues that he cannot respond to the allegations of certain consumers because he does not have their affidavits. Yet these are consumers who dealt with Suter and his companies. Suter has not been prevented from submitting his own documentation or evidence in regard to these consumers. He has simply chosen not to.

The objections registered by Rosen and CW have mainly to do with liability. For instance, they argue that the consumers knew of the relationship between the two entities and that the relationship between the insurance companies and Rosen was above board. The default in this case, of course, prevents the Court from addressing these issues of liability. Indeed, Rosen and CW ultimately argue that the default should be set aside. See Response at 4. As the Court has explained in Section B, *supra*, this is something the Court is disinclined to do.

The District also asks that the Court issue a restitution figure as an aggregate sum, rather than decree an award to specific consumers. As other consumers may come forward and as the Plaintiff in this matter is the District, not the consumers, the Court believes this to be the appropriate course. As set forth above, that amount is $1,916,185.

8

The Court should also note that Defendants have still not paid the Special Master their half of his fees, as they had previously agreed to do. As the Court vacated its earlier Order permitting payment to come from an insurer, Defendants owe the Special Master $3,328.50, which represents 50% of his fees. The District has already paid him its 50%. This Order requires Defendants to pay their share.

Finally, issues of other relief, including attorney fees and permanent injunctive relief, are not presently before the Court. To the extent Plaintiff is seeking additional relief beyond the restitution herein ordered, Plaintiff may file a motion so requesting on or before Feb. 6, 2004. If no motion is filed, the Court will enter a final judgment along the lines of the Order entered today.

The Court, accordingly, ORDERS that:

1.     Suter's Motion to Dismiss is DENIED;

2.     Defendants' Motion to Set Aside is DENIED;

3.     Judgment is entered in favor of the Special Master against all Defendants in the sum of $3,328.50; and

4.     Restitution is entered in favor of Plaintiff against all Defendants in the sum of $1,916,185.

IT IS SO ORDERED.

_Jan. 9, 2004_
Date

James E. Boasberg
Judge

: **DOCKETED** JAN 1 2 2004

MAILED JAN 1 2 2004

9